UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                  Chapter 11

99 SUTTON LLC,                                          Case No.: 21-43124 (ESS)

                            Debtor.
-------------------------------------------------------------X

## DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION OF
## THE DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE FIRST AMENDED PLAN OF REORGANIZATION.**

**THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF HER PROPERTY OR HER ASSETS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.**

LAWRENCE F. MORRISON
BRIAN J. HUFNAGEL
MORRISON TENENBAUM PLLC
87 Walker Street, Floor 2
New York, New York 10013
Telephone: (212) 620-0938
Facsimile: (646)390-5095

ATTORNEYS FOR THE DEBTOR

## TABLE OF CONTENTS

I.    Introduction .................................................................................................................. 1

a.    Purpose of This Document ............................................................................................ 1

b.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............................ 2

c.    Disclaimer.................................................................................................................... 2

II.   Background................................................................................................................... 3

a.    Description and History of the Debtor's Business ............................................................ 3

b.    Insiders of the Debtor .................................................................................................. 3

c.    Management of the Debtor During the Bankruptcy .......................................................... 3

d.    Events Leading to Chapter 11 Filing............................................................................... 3

e.    Significant Events During the Bankruptcy Case ............................................................... 3

f.    Projected Recovery of Avoidable Transfers..................................................................... 4

g.    Claims Objections......................................................................................................... 4

h.    Current and Historical Financial Conditions .................................................................... 5

III.  Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests........ 5

a.    What is the Purpose of the Plan of Reorganization? ........................................................ 5

b.    Unclassified Claims ...................................................................................................... 5

i.    Administrative expenses, involuntary gap claims, and quarterly and Court fees.................... 5

ii.   Priority tax claims......................................................................................................... 6

c.    Classes of Claims and Equity Interests........................................................................... 7

i.    Classes of Secured Claims............................................................................................. 7

ii.   General Unsecured Claims ............................................................................................. 8

iii.  Classes of equity interest holders .................................................................................. 8

d.    Means of Implementing the Plan.................................................................................... 9

i.    Source of payments ..................................................................................................... 9

ii.   Post-confirmation Management .................................................................................... 10

e.    Risk Factors .............................................................................................................. 10

f.    Executory Contracts and Unexpired Leases................................................................... 10

g.    Tax Consequences of the Plan..................................................................................... 10

IV.   Confirmation Requirements and Procedures .................................................................. 11

a.    Who May Vote or Object ............................................................................................. 11

i.    What is an allowed claim or an allowed interest? ........................................................... 12

ii.   What is an impaired claim or impaired equity interest?................................................... 12

iii.  Who is not entitled to vote ................................................................................................ 12

iv.  Who can vote in more than one class .................................................................................. 13

b.  Votes necessary to Confirm the Plan .................................................................................. 13

i.  Votes necessary for a class to accept the plan ..................................................................... 13

ii.  Treatment of non-accepting classes of secured claims, general unsecured claims, and
interests ...................................................................................................................................... 14

c.  Liquidation Analysis ............................................................................................................ 14

d.  Feasibility ............................................................................................................................ 15

i.  Ability to initially fund plan ................................................................................................ 15

ii.  Ability to make future plan payments and operate without further reorganization .............. 15

V.  Effect of Confirmation of Plan ............................................................................................ 16

a.  Discharge of Debtor ............................................................................................................. 16

b.  Modification of Plan ............................................................................................................. 16

c.  Final Decree ......................................................................................................................... 17

VI.  Other Plan Provisions .......................................................................................................... 17

a.  Statutory Fees ...................................................................................................................... 17

b.  Quarterly Reports ................................................................................................................ 17

c.  Re-vesting of Assets and Continuing Existence .................................................................. 18

d.  Unclaimed Property ............................................................................................................. 18

e.  Retention of Jurisdiction ...................................................................................................... 19

f.  Injunction and Exoneration .................................................................................................. 19

g.  Sale or Recording of Mortgage is Free of Transfer Taxes .................................................. 20

h.  Effective Date ...................................................................................................................... 20

EXHIBIT A:  PLAN OF REORGANIZATION ........................................................ 21

EXHIBIT B:  VALUE OF DEBTORS' ASSETS ...................................................... 22

EXHIBIT C:  MOST RECENT OPERATING REPORT ......................................... 23

EXHIBIT D:  LIQUIDATION ANALYSIS ............................................................... 24

EXHIBIT E:  ESTIMATED EFFECTIVE DATE PAYMENTS ............................... 25

EXHIBIT F:  PROJECTIONS .................................................................................... 26

## I.    Introduction

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of 99 Sutton LLC (the "Debtor").  This Disclosure Statement provides information about the Debtor and the plan filed on April 21, 2022 (the "Plan") to help you decide how to vote.

A copy of the Plan is attached as *Exhibit A*.  **Your rights may be affected.**  You should read the Plan and this Disclosure Statement carefully.  You may wish to consult an attorney about your rights and your treatment under the Plan.

The proposed distributions under the Plan are discussed at pages 8-11 of this Disclosure Statement.  General unsecured creditors are classified in Class 2 and will receive a pro-rata distribution of funds remaining after payment of administrative, priority, and secured creditors.  Secured creditors are classified in Class 1 and they will be paid 100% of their allowed claims on the effective date of the Plan.  The secured creditor will receive the net proceeds of a sale or refinance of the Property.  Any deficiency shall be paid by Joseph Torres such that the secured creditor is paid in full.

### a.  Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### b.   Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  A separate order has been entered (please refer to the Order for information concerning the confirmation hearing and objection deadline) setting the following information:

- Time and place of the hearing to finally approve this disclosure statement and confirm the plan,

- Deadline for voting to accept or reject the plan; and

- Deadline for objecting to the adequacy of disclosure and confirmation of the plan.

If you need additional information about the Plan, deadlines for objections, or the voting procedure, you should contact the Debtor's counsel: Morrison Tenenbaum PLLC, 87 Walker Street, New York, New York 10013, Telephone: (212) 620-0938, Facsimile: (646)390-5095, Attn: Brian J. Hufnagel, Esq., bjhufnagel@m-t-law.com

### c.   Disclaimer

**THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT ITS TERMS. THE COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE COURT HAS APPROVED THIS DISCLOSURE STATEMENT DOES NOT**

**CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE COURT, OR**

**A RECOMMENDATION THAT IT BE ACCEPTED.**

II.    **Background**

    a.  **Description and History of the Debtor's Business**

The Debtor owns the apartment building located at 99 Sutton Street, Brooklyn, NY

11222 (the "Property") which consists of 63 units.

    b.  **Insiders of the Debtor**

The insider of the Debtor is Joseph Torres who is the Manager and 100% owner of the

Debtor.

    c.  **Management of the Debtor During the Bankruptcy**

The Debtor is managed by Simon Whitley and Joseph Torres at the present time and will

continued to be managed by Mr. Whitely and Mr. Torres post-confirmation.  Mr. Whitley and

Mr. Torres do not receive any compensation from the Debtor.

    d.  **Events Leading to Chapter 11 Filing**

The Debtor's bankruptcy filing was precipitated by a dispute between the Debtor and the

predecessor to 99 Sutton Lender LLC, Customers Bank, regarding the repayment of real property

taxes advanced by Customers Bank on behalf of the Debtor.  The Debtor filed chapter 11 in

order to resolve claims of all creditors in one forum and reorganize and propose a plan to pay its

creditors.

    e.  **Significant Events During the Bankruptcy Case**

- On December 20, 2021, the Debtor filed a voluntary petition for relief under chapter 11 of the bankruptcy code.  No creditors committee, examiner, or trustee has been appointed in this case.

- On January 27, 2022, the Court entered an order setting March 28, 2022 as the bar date by which proofs of claim must be filed.  The bar date for governmental creditors was fixed for June 18, 2022.

- On January 28, 2022, the Court entered an order authorizing the Debtor to retain Morrison Tenenbaum PLLC as counsel to the Debtor.

- On April 6, 2022, the Debtor filed a complaint against 99 Sutton Lender LLC seeking a stay pursuant to section 105 of the Bankruptcy Code of an action commenced by the lender against Joseph Torres on his guaranty of the mortgage.

- The Debtor has been marketing the Property for sale and has received offers to purchase the Property.  Additionally, the Debtor has obtained a letter of intent to refinance the mortgage on the Property.  Both the sale price and refinance are insufficient to pay the lender in full and the deficiency will be paid by Joseph Torres.


    **f.   Projected Recovery of Avoidable Transfers**

Based upon a review of the Debtor's records, the Debtor does not believe that there are any actionable preference actions pursuant to section 547 of the Bankruptcy Code.

In the event that the Plan is not confirmed, the Debtor reserves the right to bring such actions if further review of its books and records discloses an actionable claim.

    **a.   Claims Objections**

    **b.   Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  Disputed claims are treated in Article 5 of the Plan.

Pursuant to the Plan, all claims objections will be filed no later than 90 days after entry for the confirmation order, unless extended pursuant to order of the Court.

### c.  Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in *Exhibit B*.

The most recent post-petition operating report filed since the commencement of the case is set forth in *Exhibit C*.

### III.    Summary of the Plan of Reorganization and Treatment of Claims and Equity Interests

### a.  What is the Purpose of the Plan of Reorganization?

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### b.  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  Therefore, the Plan Proponent has *not* placed the following claims in any class:

### i.  Administrative expenses, involuntary gap claims, and quarterly and Court fees

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 503(b) of the Bankruptcy Code.  Administrative expenses

include the value of any goods sold to the Debtor in the ordinary course of business and received

within 20 days before the date of the bankruptcy petition, and compensation for services and

reimbursement of expenses awarded by the court under § 330(a) of the Bankruptcy Code. The

Bankruptcy Code requires that all administrative expenses be paid on the effective date of the

Plan, unless a particular claimant agrees to a different treatment. Involuntary gap claims allowed

under § 502(f) of the Bankruptcy Code are entitled to the same treatment as administrative

expense claims. The Bankruptcy Code also requires that fees owed under section 1930 of title

28, including quarterly and court fees, have been paid or will be paid on the effective date of the

Plan.

The following chart lists the Debtor's estimated administrative expenses, and quarterly

and court fees, and their proposed treatment under the Plan:

| Administrative expenses | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Morrison Tenenbaum PLLC | Estimated unpaid fees through confirmation: $60,000.00 | Paid in full upon entry of an order granting a final fee application of Morrison Tenenbaum PLLC. |
| Statutory Court fees | $0.00 | Paid in full on the effective date of the Plan |
| Statutory Quarterly fees | Current[1] Estimated quarterly fees for Plan disbursements: $180,000.00 | Paid in full on the effective date of the Plan |
| **Total** | $240,000.00 | |

### ii.  Priority tax claims

Priority tax claims are unsecured income, employment, and other taxes described by §

507(a)(8) of the Bankruptcy Code. Unless the holder of such a § 507(a)(8) priority tax claim

---

[1] Any outstanding fees owed to the U.S. Trustee will be paid prior to the confirmation hearing.

agrees otherwise, it must receive the present value of such claim pursuant to 11 U.S.C. § 511, in regular installments paid over a period not exceeding 5 years from the order of relief.

Under § 1129(a)(9)(C), holders of § 507(a)(8) claims are paid, over a period not later than 5 years after the order for relief, the allowed amount of their claim.

- The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment:

| Name and type of tax | Claim No. | Filed Amount of Claim | Treatment |
|---|---|---|---|
| New York State Department of Taxation & Finance | 1 | $69.56 | Paid in full on the effective date of the Plan. |

### c. Classes of Claims and Equity Interests

### i. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Amount | Impairment? | Treatment |
|---|---|---|---|---|
| 1 | Secured Claim 99 Sutton Lender LLC, claim no. 4 | $20,780,703.61 plus interest. | Impaired | The Lender will receive the net proceeds of a sale or refinance of the Property. Any deficiency shall be paid by Joseph Torres such that the |

| | | | | secured creditor is paid in full upon closing of the sale or refinance of the Property. |
|---|---|---|---|---|

### ii.  General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to

priority under § 507(a) of the Code.  The Debtor has 2 unsecured creditors: Consolidated Edison

Company of New York Inc. in the amount of $4,507.45 and the Internal Revenue Service in the

amount of $18,362.29.  The Debtor has placed all general unsecured creditors in class 2.

The following chart identifies the Plan's proposed treatment of class 2:

| Class | Description | Impairment? | Treatment |
|---|---|---|---|
| 2 | All general unsecured creditors | Impaired | Unsecured creditors shall receive a pro-rata distribution of all funds remaining after payment of administrative, priority, and secured claims. |

### iii.  Classes of equity interest holders

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in

the Debtor.  In a corporation, entities holding preferred or common stock are equity interest

holders.  In a partnership, equity interest holders are the members.  Finally, with respect to an

individual who is a debtor, the debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of equity

interest holders:

| Class | Description | Impairment? | Treatment |
|-------|-------------|-------------|-----------|
| 3 | Equity interest holders of the Debtor | Unimpaired | Under the Plan, equity interest holders will retain their interests. |

### d.  Means of Implementing the Plan

#### i.  Source of payments

The Debtor shall fund the Plan by selling the Property or refinancing the mortgage. Under the Plan the Debtor shall retain a real estate broker and market the Property for sale or shall obtain a refinance of the mortgage.  Any deficiency shall be funded by Joseph Torres at the closing of the sale or refinance.  The Debtor shall have through August 1, 2022 to pay in full all obligations to the Lender pursuant to the loan documents or to file a motion on shortened time to sell the Property at auction subject to higher and better offers with an opening price (i) sufficient to make payment in full to the lender or (ii) a lower opening auction price on consent of the Lender.  The auction shall be held at the Bankruptcy Court or such other place that is mutually acceptable to the Debtor and the Lender.

The August 1, 2022 deadline may be extended on consent of the Lender by Notice of Proposed Stipulation subject to approval of the Bankruptcy Court.

The Debtor shall have the option at all times to refinance the Property provided that such refinancing is at an amount sufficient to pay all creditors in full.

The Debtor's counsel Morrison Tenenbaum PLLC shall be the disbursing agent (the "Disbursing Agent") under the Plan.

If the Debtor defaults under the Plan after confirmation but prior to entry of a final decree, the Court shall have the authority to appoint a plan administrator to implement the Plan or take such other actions authorized by 11 U.S.C. § 1142.

### ii. Post-confirmation Management

The Debtor will continue to be managed by Joseph Torres and Simon Whitley post-confirmation.  Mr. Torres and Mr. Whitley do not receive a salary from the Debtor.

### e. Risk Factors

The proposed Plan has the following risks:

The Property could sell for less than the amount required to pay the secured creditor in full.   In that event, Joseph Torres is required to pay any shortfall pursuant to his personal guaranty, but, with a shortfall, unsecured creditors would receive no distribution.  However, the Debtor has received several offers post-petition that are enough to pay all creditors in full.  The most recent appraisal dated December 11, 2019 values the Property at $30 million.  However, the Debtor believes that the Property will sell for much less at auction.

### f. Executory Contracts and Unexpired Leases

There are no other executory contracts or unexpired leases to be rejected or assumed under the Plan.

### g. Tax Consequences of the Plan

The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

**THE PROPONENT DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR**

INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF
THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS
UNDER THE PLAN.  CREDITORS AND INTEREST HOLDERS SHOULD
SEEK INDEPENDENT COUNSEL CONCERNING THE TAX
CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

IV.      Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §1129 of the Code.

These include the requirements that:

- The Plan must be proposed in good faith;

- If a class of claims is impaired under the Plan, at least one impaired class of claims must accept the Plan, without counting votes of insiders;

- The Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and

- The Plan must be feasible.

These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the

only requirements for confirmation.

a.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that

the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.

Except as stated in Part IV.A.3 below, a creditor or equity interest holder has a right to vote for

or against the Plan only if that creditor or equity interest holder has a claim or equity interest that

is both

11

(1) Allowed or allowed for voting purposes and

(2) Impaired.

In this case, the Plan Proponent believes that all classes of creditors are unimpaired and deemed to have accepted the Plan.

### i.   What is an allowed claim or an allowed interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either

    (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or

    (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.

When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was March 28, 2022**

### ii.   What is an impaired claim or impaired equity interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered *impaired* if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### iii.   Who is not entitled to vote

The holders of the following five types of claims and equity interests are *not* entitled to

vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

**Even if you are not entitled to vote on the plan, you have a right to object to the confirmation of the Plan and the adequacy of the Disclosure Statement.**

### iv.   Who can vote in more than one class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### b.  Votes necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless:

(1)     all impaired classes have voted to accept the Plan; or

(2)     at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and the Plan is eligible to be confirmed by "cram down" of the non-accepting classes, as discussed later in Section b.ii.

### i.   Votes necessary for a class to accept the plan

A class of claims accepts the Plan if both of the following occur:

(1) the holders of more than ½ of the allowed claims in the class, who vote, cast their votes to accept the Plan, and

(2) the holders of at least ⅔ in dollar amount of the allowed claims in the class, who

vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least ⅔ in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### ii. Treatment of non-accepting classes of secured claims, general unsecured claims, and interests

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan upon the request of the Plan proponent if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds non-accepting classes is commonly referred to as a *cram down* plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not *discriminate unfairly*, and is *fair and equitable* toward each impaired class that has not voted to accept the Plan.

**You should consult your own attorney if a *cram down* confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.**

### c. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  The Debtor believes that all creditors are being paid at least as much as they would receive in a liquidation.  A liquidation analysis is attached to this Disclosure Statement as *Exhibit D*.

### d.  Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.  The Plan proposes and provides for the liquidation of the Debtor so the issue of the future viability of the Debtor is not relevant to confirmation in this case.

### i.  Ability to initially fund plan

The Plan Proponents believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the estimated amount of cash required on the effective date of the Plan are attached to this disclosure statement as *Exhibit E.*

### ii.  Ability to make future plan payments and operate without further reorganization.

The Plan Proponents must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponents have provided projected financial information.  Those projections are listed in *Exhibit F.*

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes that is sufficient to meet its post-confirmation obligations.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

V.       **Effect of Confirmation of Plan**

      a.  **No Discharge of Debtor**


    **Discharge if the Debtor is a corporation and § 1141(d)(2) is not applicable.**  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt:

    (1)  Imposed by the Plan, or

    (2)  To the extent provided in 11 U.S.C. § 1141(d)(6).

    In the event that the Debtor liquidates and sells the Property, the Debtor will not receive a. Discharge pursuant to § 1141(d)(3).

    Pursuant to the Final Cash Collateral Order entered in the Debtor's case, neither the Adequate Protection Superpriority Claim or the Replacement Lien shall be discharged by the confirmation order, notwithstanding section 1142(d) of the Bankruptcy Code, unless (i) the order is entered with the prior written consent of the Lender, or (ii) the Adequate Protection Superpriority Claim has been Paid in Full on or before the effective date of such plan. The Debtor will only receive a discharge if the Debtor refinances the mortgage on the Property and continues to operate.  If the Debtor sells the Property and ceases operations, the Debtor will not receive a discharge under the plan pursuant to § 1141(d)(3) of the Bankruptcy Code.

      b.  **Modification of Plan**

    The Plan Proponents may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponents may also seek to modify the Plan at any time after confirmation only if:

    (1) The Plan has not been substantially consummated and

    (2) The Court authorizes the proposed modifications after notice and a hearing.

### c. Final Decree

Pursuant to EDNY LBR 3022-1, the Debtor shall file a final decree motion with the Court on notice to the Office of the United States Trustee within 14 days following the full administration of the Debtor's estate. Upon request, the Court may reduce or extend the time to file such application.

## VI.    Other Plan Provisions

### a. Statutory Fees

Statutory fees, and any applicable interest thereon, are all fees payable pursuant to chapter 123 of title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. § 1930(a)(6) and interest, if any, required to be paid by 31 U.S.C. §3717 (collectively, "U.S. Trustee Fees"). U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan. The Debtor shall remain responsible for any and all U.S. Trustee fees that become due and shall pay same on a timely basis.

### b. Quarterly Reports

Until the Chapter 11 Cases is closed, converted or dismissed, whichever is earlier, the Reorganized Debtor shall file quarterly reports setting forth the status of Distributions to holders

of Allowed Class 1, and 2 Claims. The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Disbursing Agent shall maintain an accurate register of the General Unsecured Claims.

### c.  Re-vesting of Assets and Continuing Existence

As of the Effective Date, pursuant to provisions of Bankruptcy Code sections 1141(b) and (c), all property and assets of the Debtor and the Debtor's estate shall be transferred to and shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and the Confirmation Order.

Unless otherwise agreed to by the claimant, immediately after the earlier of a Final Order of the Bankruptcy Court or the occurrence of the Effective Date, the Debtor or the Post-Confirmation Debtor shall pay all Allowed Administrative Expense Claims, including Fee Claims.

From and after the Effective Date, the Post-Confirmation Debtor will continue in existence and shall be vested with all of the Debtor's assets. In addition, the Debtor's ownership interests will be unaffected by confirmation of the Plan.

### d.  Unclaimed Property

The Post Confirmation Debtor shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the respective holders of Claims entitled thereto under the terms of the Plan.

At the end of one (1) year following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims entitled to

Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, and all right, title and interest in and to such property shall be vested in the Debtor.

### e.  Retention of Jurisdiction

Notwithstanding Confirmation, the Court shall retain jurisdiction for the following purposes:

(1)    Determination of the allowability of Claims upon objections filed to such Claims, and any pending litigation by the Debtors or by creditors or third parties;

(2)    Determination of requests for payment of Claims and fees entitled to priority under § 507;

(3)    Resolution of any disputes concerning the interpretation of the Plan;

(4)    Implementation of the provisions of the Plan;

(5)    Entry of Orders in aid of Consummation of the Plan;

(6)    Modification of the Plan pursuant to § 1127 of the Code;

(7)    Adjudication of any causes of action including voiding powers actions commenced by the Debtors-in-Possession; and

(8)    Entry of a Final Decree and closing the case

### f.  Injunction and Exoneration

Except as otherwise provided in the Plan or Confirmation Order, on and after the Confirmation Date, all entities which have held, currently hold, or may hold a debt, claim, other liability of interest against the Debtor pursuant to the provisions of § 1141(d) of the Bankruptcy Code and this section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner or

judgment, award, decree, order other than as permitted under sub-paragraph (a) above; and (c)

creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed

under this Plan.

### g.  Sale is Free of Transfer Taxes

The sale under the Plan shall be free of any mortgage, recording, transfer, or other such

tax to the fullest extent permitted by 11 U.S.C. § 1146.

### h.  Effective Date

The Plan shall be effective and binding on the Effective Date.  The Effective Date shall

be the date of initial distributions under the Plan which shall be no later than 14 days after the

Debtor closes the sale or refinance of the Property.  It will be a condition to the Effective Date

that each of the following provisions, terms, and conditions will have been satisfied pursuant to

the provisions of the Plan:

(1) The Confirmation Order shall have been entered by the Court and shall not be subject
    to any stay or subject to an unresolved request for revocation under Section 1144 of
    the Bankruptcy Code.

(2) The Debtor shall have paid initial distributions required by the Plan.


Dated: Brooklyn, New York
       April 20, 2022

                                        99 Sutton LLC


                                        /s/ Joseph Torres
                                        By: Joseph Torres, Manager

**EXHIBIT A:**
**PLAN OF REORGANIZATION**

## EXHIBIT B:
## VALUE OF DEBTORS' ASSETS

**99 SUTTON LLC**

| | |
|---|---|
| Apartment building located at 99 Sutton Street, Brooklyn, NY, value per Schedule A | $25,000,000.00 |
| Estimated Cash on Hand | $_____ |
| **Total Current Assets** | **$** |

**EXHIBIT C:**
**MOST RECENT OPERATING REPORT**

**EXHIBIT D:**
**LIQUIDATION ANALYSIS**

| 99 Sutton LLC | Market Value | Estimated Value in Liquidation Auction |
|---|---|---|
| Apartment building located at 99 Sutton Street, Brooklyn, NY | $25,000,000.00 | $20,000,000.00 |
| Cash on hand | | |
| **Total Current Assets** | **$25,000,000.00** | **$20,000,000.00** |
| | Chapter 7 administrative expenses | $50,000.00 |
| | Chapter 11 administrative expenses | $60,000.00 |
| | Secured Debt | $20,780,703.61 |
| | The Debtor projects that no funds would be available for general unsecured creditors through a liquidation. | |

**EXHIBIT E:**
**ESTIMATED EFFECTIVE DATE PAYMENTS**

**RORA LLC**

| Creditor/Payee | Amount |
|---|---|
| Morrison Tenenbaum PLLC | $60,000.00 |
| United States Trustee | $160,000 |
| | |
| 99 Sutton Lender LLC | $20,780,703.61 |
| Interest approximate | $ XXXXXX |
| | |
| NYS Dept. of Tax & Fin. | $69.56 |
| | |
| Total: | $ |

**EXHIBIT F:**
**PROJECTIONS**

**To be filed no later than 14 days before the**
**hearing to consider confirmation of the Plan**